UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JDG INVESTMENTS, INC. | ) | Case No.  10-05450-8-RDD |
| | ) | Chapter 11 |
| Debtor. | ) | |

# PLAN OF REORGANIZATION
October 6, 2010

JASON L. HENDREN
N.C. State Bar #26869
REBECCA F. REDWINE
N.C. State Bar #37012

Attorneys for Debtor
HENDREN & MALONE, PLLC
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone:  (919) 573-1422
Facsimile:  (919) 420-0475
Email:  jhendren@hendrenmalone.com
         rredwine@hendrenmalone.com

# TABLE OF CONTENTS

I.       Summary of Plan..................................................................................3

II.      Definitions.........................................................................................4

III.     Treatment of Administrative and Priority Tax Claims ...........................6
         a. Administrative Claims .........................................................................6
         b. Priority Tax Claims.............................................................................6

IV.      Classification and Treatment of Claims and Interests ...........................6
         Class I – Priority Non-Tax Claims..............................................6
         Class II – Four Oaks Bank ......................................................6
         Class III – Capital Bank..........................................................7
         Class IV – S.T. Wooten ..........................................................8
         Class V – Branch Banking and Trust Company ............................9
         Class VI – Crescent State Bank ..............................................10
         Class VII – KS Bank..............................................................11
         Class VIII – General Unsecured Claims ....................................11
         Class IX – Equity Security Holders ..........................................11

V.       Means of Execution ..........................................................................12

VI.      Similar Treatment for Each Claim within a Class ...............................12

VII.     Provisions Governing Distributions.....................................................13

VIII.    Rejection of Executory Contracts ......................................................13

IX.      Acceptance or Rejection of Plan........................................................13

X.       "Cramdown" for Impaired Creditors Not Accepting the Plan ...............15

XI.      Retention of Jurisdiction....................................................................15

XII.     Miscellaneous Provisions...................................................................16

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JDG INVESTMENTS, INC. | ) | Case No.  10-05450-8-RDD |
| | ) | Chapter 11 |
| Debtor. | ) | |

## PLAN OF REORGANIZATION

Pursuant to the provisions of Section 1123 of the Bankruptcy Code (11 U.S.C. § 1123), the Debtor, JDG Investments, Inc., hereby submits the following Plan of Reorganization:

## I. SUMMARY OF PLAN

The Debtor is a North Carolina corporation that owns approximately 391 single-family lots located in six (6) different subdivisions in Johnston County, North Carolina. The Debtor intends to surrender the subdivisions known as Bluffs at Southfort and Ives Landing to BB&T. In addition, the Debtor is surrendering Knolls at the Neuse III to KS Bank. The remaining subdivisions, namely Walnut Creek, Knolls at the Neuse I, Hunter's Mill, White Oak Landing and Tymber Creek, consist of substantially completed, fully-developed single-family lots. The Debtor intends to market and sell the completed developments in order to maximize value for the benefit of all creditors in this case.

The Debtor's Plan of Reorganization ("Plan") is based upon the Debtor's belief that the interests of its creditors will be best served if it is allowed to orderly liquidate its assets in the ordinary course of business.

The Debtor will pay the administrative costs in full on the Effective Date or upon such other mutually acceptable terms as the parties may agree.

Any and all priority taxes due and owing to the Internal Revenue Service, N.C. Department of Revenue, Wake County Revenue Department, or any county or city taxing authority, shall be paid from the Liquidation Proceeds.

The Debtor will treat the secured claims of Four Oaks Bank ("Four Oaks"), Capital Bank, S.T. Wooten, Branch Banking and Trust Company ("BB&T"), Crescent State Bank ("Crescent"), and KS Bank as outlined more fully herein.

The total of estimated unsecured claims is approximately $4,515,231.42. Creditors with allowed claims in this class will receive distributions following satisfaction of all senior classes of creditors in this case.

3

The Debtor's liabilities will be paid according to the priorities of the Bankruptcy Code and the Orders of this Court. The specific amounts and terms of payment will be made according to the treatment of each respective creditor.

## II. DEFINITIONS

1.     "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended. References to "§___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. §101, et seq.

2.     "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Chapter 11 cases.

3.     "CLAIM" shall mean a duly listed or a timely filed claim which is allowed in order to be paid by the Court.

4.     "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article III of the Plan.

5.     "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. §1129.

6.     "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. §1129.

7.     "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

8.     "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

9.     "CREDITORS" shall mean all creditors of the Debtor holding claims for unsecured debts, liabilities, demands or claims of any character whatsoever.

10.    "DEBTOR" shall mean JDG Investments, Inc.

11.    "DISBURSING AGENT" shall mean Jason L. Hendren, attorney, or that person selected by the Court who shall perform the duties and have the rights and obligations described herein.

12.    "DISCLOSURE STATEMENT" shall mean the Disclosure Statement describing this Plan prepared in accordance with §1125 and approved by order of the Bankruptcy Court, to be distributed to the holders of claims whose votes with respect to this Plan are to be solicited.

13.    "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

14.    "EFFECTIVE DATE" shall be the date that is ten (10) days following entry of the Order Confirming Plan.

15.    "FINAL DECREE" shall mean the order of this Court pursuant to Bankruptcy Rule 3022 closing this case.

16.    "IMPAIRED" classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the "Effective Date" (as defined in the Plan).

17.    "PETITION DATE" shall mean the date upon which the Debtor filed the voluntary Chapter 11 petition, to wit, July 8, 2010.

18.    "PLAN" shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

19.    "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under §507.

20.    "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

21.    "SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrances which have been properly perfected as required by law with respect to property owned by the Debtor, to the extent of the value of the collateral.

22.    "SUBSTANTIAL CONSUMMATION" shall mean the time the Reorganized Debtor has commenced the distribution of initial Plan payments to creditor classes.

23.    "TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to §507(a)(7).

24.    "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a tax claim, administrative claim, or secured claim.

25.    "LIQUIDATION PROCEEDS" shall mean all funds resulting from the liquidation of the Debtor's assets, less costs of liquidation.

## III.  TREATMENT OF ADMINISTRATIVE AND PRIORITY TAX CLAIMS

**a. Administrative Claims**.  Administrative costs and expenses approved by the Court shall be paid in cash and in full on the Effective Date of the Plan.  In the event that funds are not available to pay such costs and expenses on the Effective Date of the Plan, then each holder of such a claim will receive monthly payments from the Debtor's cash flow until paid in full.  Such claims remaining unpaid thirty (30) days following the Effective Date shall accrue interest at a rate of 5% per annum.

**b. Priority Tax Claims**.  The Debtor proposes to pay these claims in full from distribution of the Liquidation Proceeds.  Notwithstanding the foregoing, the Holder of an allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the allowed Priority Tax Claim.  Any Claim or demand for any such penalty will be subject to treatment as an Unsecured Claim, to the extent allowed.

## IV.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and are excluded from the following Classes.  Section III describes the treatment of Administrative Claims and Priority Tax Claims.  For the purposes of this Plan, Holders of Claims against, or Interests in, the Debtor are classified as follows in accordance with section 1122(a) of the Bankruptcy Code:

**A.**    **Class I – Priority Non-Tax Claims**.  Holders of Allowed Claims in Class I shall receive distributions from available Liquidation Proceeds prior to distributions to general unsecured creditors in Class VIII.  The Debtor does not believe there are any claims in this class.

**B.**    **Class II – Four Oaks Bank ("Four Oaks")**.

(1)    Classification.  The Debtor entered into a series of development loans with Four Oaks Bank for the development of the following real estate collateral:  Walnut Creek, Tract 1, Walnut Creek, Tract 2, and Knolls at the Neuse I.  The various Notes are secured by the real estate collateral which was the subject of the development loans.  The outstanding balances owed to Four Oaks on the Notes as of the petition date are believed to be as follows:  Walnut Creek, Tract 1: $575,564.51; Walnut Creek, Tract 2: $210,000; Knolls at the Neuse I, 1st Deed of Trust:  $2,856,887.55; Knolls at the Neuse I, 2nd Deed of Trust: $1,499,229.93.

(2)    Impairment.    This class will be impaired.

6

(3)    <u>Treatment</u>.  This obligation shall be treated as a secured obligation of the Debtor in an amount equal to the lesser of:  (1) the value of the property which secures the debt; or (2)(a) all outstanding principal and interest due on the petition date plus (b) any post-petition interest, costs and expenses  which may be approved by the Court pursuant to Section 506(b).  Four Oaks shall retain its liens pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until the secured claim is paid.  The Debtor intends to market the properties known as Walnut Creek and Knolls at the Neuse I pursuant to the Sales Procedure Order approved by the Court at the hearing held on September 29, 2010.  All net proceeds from the liquidation of the collateral securing these claims shall be retained by Four Oaks after reduction for allowed expenses as set forth in the budget, attached to the Disclosure Statement as Exhibit "D".  In the event that a deficiency balance remains after the application of the Liquidation Proceeds, such deficiency shall be treated in Class VIII, General Unsecured Claims, hereunder.  The notes shall be treated as current, non-default loans. The outstanding balances shall be calculated on a non-default basis and shall accrue interest at a rate of 2.5% per annum until the secured claim is paid in full.

Based upon available information, it appears that there is an obligation to complete all work necessary to cause the N.C. Department of Transportation ("DOT") to assume responsibility for maintaining the roads in the Knolls at the Neuse I and Walnut Creek subdivisions.  In addition, there is an obligation to remain permit compliant.  The Debtor believes that it has appropriately estimated a reserve fund from the sale of each lot that will be sufficient to satisfy the requisite financial obligations for DOT.  However, the Debtor has not proposed escrow for permit compliance as there is no way to estimate what issues might be raised in the future by permitting authorities.   In the event that additional funding becomes necessary to remain DOT or permit compliant, the Debtor proposes that Four Oaks provide the necessary funding to satisfy such obligations.  The Debtor is unwilling to continue selling lots in these subdivisions without the bank's agreement to assume these obligations going forward.  To the extent that Four Oaks does not agree to provide the funding necessary to satisfy these obligations, then the Debtor reserves the right to either (a) seek additional use of cash collateral from the Court; or (b) cease all liquidation efforts and immediately surrender the collateral to the bank.

**C.    <u>Class III - Capital Bank ("Capital Bank")</u>.**

(1)    <u>Classification</u>.

a.  <u>Note 1 ("Hunters Mill")</u> - On or about February 25, 2008, the Debtor and Capital Bank entered into a promissory note in the original principal amount of $1,650,000.00, with interest accruing at a variable rate of Prime plus 0.25% per annum ("Note 1").  Note 1 is secured by a Deed of Trust with Future Advance provisions.  Under the terms of Note 1, as modified from time to time, the Debtor was required to make monthly payments of all accrued interest, with a maturity date of all outstanding principal and interest, as extended, due on June 10, 2010.  The outstanding balance owed to Capital Bank as of the petition date was $897,346.22 according to Capital Bank's proof of claim.

b.  <u>Note2 ("Tymber Creek")</u> - On or about August 22, 2007, the Debtor and Capital Bank entered into a promissory note in the original principal amount of $817,500.00, with interest accruing at a variable rate of Prime plus 0.25% per annum ("Note 2").  Note 2 is secured by a Deed

of Trust with Future Advance provisions.  Under the terms of Note 2, as modified from time to time, the Debtor was required to make monthly payments of all accrued interest, with a maturity date of all outstanding principal and interest, as extended, due on June 10, 2010.  The outstanding balance owed to Capital Bank as of the petition date was $282,122.86 according to Capital Bank's proof of claim.

      (2)   Impairment.   This class will be impaired.

      (3)   Treatment.  These obligations shall be treated as a secured obligation of the Debtor in an amount equal to the lesser of:  (1) the value of the property which secures the debt; or (2)(a) all outstanding principal and interest due on the petition date plus (b) any post-petition interest, costs and expenses  which may be approved by the Court pursuant to Section 506(b).  Capital Bank shall retain its liens pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until the secured claims are paid.  The Debtor intends to market the properties known as Hunter's Mill and Tymber Creek pursuant to the Sales Procedure Order approved by the Court at the hearing held on September 29, 2010.  All net proceeds from the liquidation of the collateral securing these claims shall be retained by Capital Bank after reduction for allowed expenses as set forth in the budget, attached to the Disclosure Statement as Exhibit "D".  In the event that a deficiency balance remains after the application of the Liquidation Proceeds, such deficiency shall be treated in Class VIII, General Unsecured Claims, hereunder.  The notes shall be treated as current, non-default loans.  The outstanding balances shall be calculated on a non-default basis and shall accrue interest at the contract rate until the secured claim is paid in full.

      Based upon available information, it appears that there is an obligation to complete all work necessary to cause the N.C. Department of Transportation ("DOT") to assume responsibility for maintaining the roads in the Hunter's Mill and Tymber Creek subdivisions.  In addition, there is an obligation to remain permit compliant.  The Debtor believes that it has appropriately estimated a reserve fund from the sale of each lot that will be sufficient to satisfy the requisite financial obligations for DOT.  However, the Debtor has not proposed escrow for permit compliance as there is no way to estimate what issues might be raised in the future by permitting authorities.  In the event that additional funding becomes necessary to remain DOT or permit compliant, the Debtor proposes that Capital Bank provide the necessary funding to satisfy such obligations.  The Debtor is unwilling to continue selling lots in these subdivisions without the bank's agreement to assume these obligations going forward.  To the extent that Capital Bank does not agree to provide the funding necessary to satisfy these obligations, then the Debtor reserves the right to either (a) seek additional use of cash collateral from the Court; or (b) cease all liquidation efforts and immediately surrender the collateral to the bank.

**D.**    **Class IV – S.T. Wooten.**

      (1)   Classification.  On or about July 31, 2009, the Debtor entered into a Line of Credit Promissory Note and related Agreement with S.T. Wooten.  Said note and agreement is secured by a Deed of Trust recorded on August 10, 2009 in Johnston County, North Carolina, granting S.T. Wooten a junior deed of trust on the Hunter's Mill and Tymber Creek subdivisions. S.T. Wooten's lien is subordinate to the liens of the Class III creditor, Capital Bank.  The outstanding balance owed

8

to S.T. Wooten on account of their lien as of the petition date was $768,758.75 according to an objection filed by S.T. Wooten on September 16, 2010 to the Debtor's Motion for Authorization to Use Cash Collateral.

(2)  Impairment.  This class will be impaired.

(3)  Treatment.  This obligation shall be treated as a secured obligation of the Debtor in an amount equal to the lesser of: (1) the value of the property which secures the debt; or (2)(a) all outstanding principal and interest due on the petition date plus (b) any post-petition interest, costs and expenses which may be approved by the Court pursuant to Section 506(b). S.T. Wooten shall retain its liens pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until its secured claim is paid. Following the satisfaction of the Class III secured claims in the respective subdivisions, claims in this Class will receive distributions from the Liquidation Proceeds until S.T. Wooten's secured claim is satisfied. In the event that a deficiency balance remains after satisfaction of the Class IV secured claim, such deficiency shall be treated in Class VIII, General Unsecured Claims, hereunder. This obligation shall be treated as a current, non-default loan. The outstanding balance shall be calculated on a non-default basis and shall accrue interest at the contract rate until the secured claim is paid.

**E.    Class V – Branch Banking and Trust Company ("BB&T").**

(1)  Classification.

a.  Note 1 ("Ives Landing") - On or about April 17, 2007, the Debtor and BB&T Bank entered into a promissory note in the original principal amount of $2,550,000.00, with interest accruing at a variable rate of Prime plus 0.25% per annum ("Note 1"). Note 1 is secured by a Deed of Trust on Ives Landing. Under the terms of Note 1, the Debtor was required to make quarterly payments of all accrued interest, with a maturity date of all outstanding principal and interest due on April 17, 2010. The outstanding balance owed to BB&T as of the petition date was $2,033,445.92 according to BB&T.

b.  Note 2 ("Bluffs at Southfort") - On or about February 13, 2008, the Debtor and BB&T entered into a promissory note in the original principal amount of $1,440,000.00, with interest accruing at a variable rate of Prime plus 0.35% per annum ("Note 2"). Note 2 is secured by a Deed of Trust on Bluffs at Southfort. Under the terms of Note 2, the Debtor was required to make quarterly payments of all accrued interest, with a maturity date of all outstanding principal and interest due on November 13, 2010. The outstanding balance owed to BB&T as of the petition date was $1,618,034.06 according to BB&T.

(2)  Impairment.  This class will be unimpaired.

(3)  Treatment.  On or about September 22, 2010, this Court approved the Consent Order between the Debtor and BB&T, allowing this creditor relief from the automatic stay to take possession of and liquidate the property known as "Bluffs at Southfort". Similarly, the Debtor and BB&T have submitted a Consent Order allowing BB&T relief from the automatic stay to take

possession of and liquidate the property known as "Ives Landing". Following liquidation of its collateral, BB&T shall pay to the estate all net proceeds, if any, remaining after the satisfaction of BB&T's secured claims. In the event that a deficiency balance remains after liquidation of its collateral, such deficiency shall be treated in Class VIII, General Unsecured Claims, hereunder. This obligation shall be treated as a current, non-default loan. The outstanding balance shall be calculated on a non-default basis

Surplus funds resulting from the liquidation of the real property, if any, shall be distributed in accordance with the provisions of the Plan.

### F.    Class VI - Crescent State Bank ("Crescent").

(1)    Classification.  The Debtor and Crescent are parties to that certain promissory note in the original principal amount of $3,126,276.00 (the "Note"). The Note was secured by a Deed of Trust on that certain subdivision known as White Oak Landing. The outstanding balance owed to Crescent as of the petition date was $1,536,548.94 according to Crescent.

(2)    Impairment.  This class will be impaired.

(3)    Treatment.  This obligation shall be treated as a secured obligation of the Debtor in an amount equal to the lesser of:  (1) the value of the property which secures the debt; or (2)(a) all outstanding principal and interest due on the petition date plus (b) any post-petition interest, costs and expenses which may be approved by the Court pursuant to Section 506(b). Crescent shall retain its lien pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until the secured claim is paid. The Debtor intends to market the properties known as White Oak Landing pursuant to the Sales Procedure Order approved by the Court at the hearing held on September 29, 2010 until all collateral is liquidated. All net proceeds from the liquidation of the collateral securing this claim shall be retained by Crescent after reduction for allowed expenses as set forth in the budget, attached to the Disclosure Statement as Exhibit "D". In the event that a deficiency balance remains after the application of the Liquidation Proceeds, such deficiency shall be treated in Class VIII, General Unsecured Claims, hereunder.  The note shall be treated as current, non-default loan. The outstanding balance shall be calculated on a non-default basis and shall accrue interest at the contract rate until the secured claim is paid in full.

Based upon available information, it appears that there is an obligation to complete all work necessary to cause the N.C. Department of Transportation ("DOT") to assume responsibility for maintaining the roads in the White Oak Landing subdivision. In addition, there is an obligation to remain permit compliant. The Debtor believes that it has appropriately estimated a reserve fund from the sale of each lot that will be sufficient to satisfy the requisite financial obligations for DOT. However, the Debtor has not proposed escrow for permit compliance as there is no way to estimate what issues might be raised in the future by permitting authorities.  In the event that additional funding becomes necessary to remain DOT or permit compliant, the Debtor proposes that Crescent provide the necessary funding to satisfy such obligations. The Debtor is unwilling to continue selling lots in these subdivisions without the bank's agreement to assume these obligations going forward. To the extent that Crescent does not agree to provide the funding necessary to satisfy these

obligations, then the Debtor reserves the right to either (a) seek additional use of cash collateral from the Court; or (b) cease all liquidation efforts and immediately surrender the collateral to the bank.

### G.    Class VII – KS Bank

(1)    Classification.  On or about July 2, 2008, the Debtor and KS Bank entered into a promissory note in the original principal amount of $1,102,500.00, with interest accruing at a variable rate of Prime plus 0.25% per annum (the "Note").  The Note is secured by a Deed of Trust with Future Advance provisions.  Under the terms of the Note, the Debtor was required to make monthly payments of all accrued interest, with a maturity date of all outstanding principal and interest due on July 1, 2009.  The outstanding balance owed to KS Bank as of the petition date was $1,105,949.86 according to KS Bank's proof of claim.

(2)    Impairment.  This class will be unimpaired.

(3)    Treatment.  The Debtor intends to surrender the property known as Knolls at the Neuse III to KS Bank.  As of the date of this Plan filing, KS Bank had not filed a Motion for Relief from the Automatic Stay as to its collateral.  After surrender of the collateral, KS Bank shall liquidate its collateral in accordance with applicable state law.  Following liquidation of its collateral, KS Bank shall pay to the estate all net proceeds, if any, remaining after the satisfaction of KS Bank's secured claim.  In the event that a deficiency balance remains after liquidation of its collateral, such deficiency shall be treated in Class VIII, General Unsecured Claims, hereunder.  This obligation shall be treated as a current, non-default loan.  The outstanding balance shall be calculated on a non-default basis.

Surplus funds resulting from the liquidation of the real property, if any, shall be distributed in accordance with the provisions of the Plan.

### H.    Class VIII – General Unsecured Claims.

(1)    Classification.  This class consists of all allowed, undisputed, non-contingent unsecured claims listed in the Debtor's petition or as otherwise approved by the Court.

(2)    Impairment.  This class will be impaired.

(3)    Treatment.  The approximate total of asserted general unsecured claims based on claims filed or scheduled as of October 6, 2010 is $4,515,231.42.  The deadline for filing claims is November 12, 2010.  Claimants in this class with allowed claims will receive pro-rata distributions from the Liquidation Proceeds remaining from the sale of the Debtor's real property, if any, after payment to creditors in all senior classes in accordance with the various treatments set forth herein.

### I.    Class IX – Equity Security Holders.

(1)    Classification.  This class consists of the shareholder(s) of the Debtor as follows:

The Estate of Gregory A. Johnson - 25% ownership interest
Donald E. Millard - 25% ownership interest
Joey Millard-Edwards – 25% ownership interest
Eric W. Sellers – 25% ownership interest

(2)   Impairment.   This class will be unimpaired.

(3)   Treatment.   The equity security holders listed above shall retain their ownership interests upon confirmation of the Debtor's Plan.

## V. MEANS OF EXECUTION

A.   The Debtor shall deposit all revenue into a designated bank account and disburse all funds in accordance with the terms of this Plan.

B.   The Debtor shall make all payments as called for by the Plan, and the Debtor will further execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of this Plan and the Bankruptcy Code.

C.   The Debtor shall take such other action as is necessary to satisfy the other terms and requirements of this Plan and the Bankruptcy Code.

D.   All funds necessary for the implementation of this Plan shall be obtained from funds resulting from the liquidation of the Debtor's property as identified more fully in the Debtor's Disclosure Statement.

E.   Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code.  No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

F.   All payments, distributions, or transfers to be made under the Plan, except as expressly provided by the Plan or the Court, shall be made without interest.

G.   Administrative claims unpaid on the Effective Date will be paid from the Liquidation Proceeds.

H.   All objections to claims, fee applications and adversary proceedings will be filed with the Court within sixty (60) days of the Effective Date.

## VI. SIMILAR TREATMENT FOR EACH CLAIM WITHIN A CLASS

The claims stated herein, by modification, Court Order, or other legally appropriate manner, might be modified throughout the course of payment under this Plan.  The Debtor, upon full payment

as called for under any notes and deeds of trust, shall be entitled to have the notes marked paid and satisfied and the deeds of trust canceled as a matter of record, by the Trustee, or by appropriate application to this Bankruptcy Court, and upon a showing that the full amount of the monthly payments were made by the Debtor.

## VII. PROVISIONS GOVERNING DISTRIBUTIONS

A.      Delivery of Distributions in General. Distributions to holders of allowed claims shall be made: (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or (ii) is not available, (iii) at the addresses reflected in the Debtor's schedules of liabilities.

B.      Distribution Dates. It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date, unless otherwise stated herein.

## VIII. REJECTION OF EXECUTORY CONTRACTS

Except as specified in this Plan, all contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court are hereby specifically rejected; provided, however, that this provision is not intended to reject and does not reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between the Debtor and any secured creditor. Further, this provision does not reject any verbal or written agreement currently existing between the Debtor and any lot purchaser which are hereby assumed.

## IX. ACCEPTANCE OR REJECTION OF PLAN;
## EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.      Each Impaired Class Entitled to Vote Separately. Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B.      Acceptance by a Class of Creditors. Consistent with §1126(c) of the Bankruptcy Code, and except as provided in §1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more that one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C.      Claimants Entitled to Vote. Holders of impaired claims shall be entitled to vote if:

(1)      Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed. The claim shall be

allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules;

(2)    Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018;

(3)    Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

(4)    Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D.    <u>Confirmation Hearing</u>. The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E.    <u>Acceptances Necessary to Confirm the Plan</u>. At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class. Under §1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan. Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F.    <u>Confirmation of Plan Without Necessary Acceptances</u>. The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes. In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class. In the event that any class votes against the plan, the Debtors hereby request and move the Court under the provisions of this Plan outlined in Section IX herein, for confirmation pursuant to the "cramdown" provisions of §1129(b) of the Bankruptcy Code. In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with §1129(b)(2)(A).

## X.  "CRAMDOWN" FOR IMPAIRED CREDITORS
## NOT ACCEPTING THE PLAN

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes.  The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## XI.  RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of Sections 105(a) and 1127 of the Code and for, without limitation, the following purposes, inter alia:

1.    to determine any and all objections to the allowance of claims and/or interests;

2.    to determine any and all applications for allowance of compensation for periods prior to the Confirmation Date;

3.    to determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

4.    to determine all controversies and disputes arising under or in connection with the Plan;

5.    to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

6.    to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

7.    to determine such other matters and for such other purposes as may be provided for in the confirmation order;

8.    to determine all disputes regarding property of the estate;

9.    to establish and adjust procedures for the orderly administration of the estate;

10.    to determine matters that are subject to proceedings duly removed to the Bankruptcy Court; and

11.    to replace the Debtor-in-Possession with a Trustee for good cause shown.

## XII. <u>MISCELLANEOUS PROVISIONS</u>

A.    <u>Survival of Terms</u>.  The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

B.    <u>Successors Bound</u>.  This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtor, and the holders of claims and interests.

C.    <u>Controlling Law</u>.  This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

D.    <u>Further Assurance</u>.  If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

(this space intentionally left blank)

Respectfully submitted, this the 6th day of October, 2010.

s/ Jason L. Hendren
JASON L. HENDREN
N.C. State Bar #26869
REBECCA F. REDWINE
N.C. State Bar #37012

HENDREN & MALONE, PLLC
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone:  (919) 573-1422
Facsimile:  (919) 420-0475
Email:  jhendren@hendrenmalone.com
          rredwine@hendrenmalone.com
Attorneys for Debtor


JDG INVESTMENTS, INC.

s/Donald E. Millard
Donald E. Millard, President

## CERTIFICATE OF SERVICE

I, Jason L. Hendren, 4600 Marriott Drive, Suite 150, Raleigh, North Carolina 27612, certify:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age;

That on the 6th day of October, 2010, I served copies of the foregoing document on the parties listed below, either electronically or by depositing a copy of the same in the United States mail bearing sufficient postage.

I certify under penalty of perjury that the foregoing is true and correct.

This the 6th day of October, 2010.

> s/ Jason L. Hendren
> JASON L. HENDREN
> N.C. State Bar #26869
> REBECCA F. REDWINE
> N.C. State Bar #37012
>
> HENDREN & MALONE, PLLC
> 4600 Marriott Drive, Suite 150
> Raleigh, NC 27612
> Telephone: (919) 573-1422
> Facsimile: (919) 420-0475
> Email: jhendren@hendrenmalone.com
>          rredwine@hendrenmalone.com
> Attorneys for Debtor

TO:

Scott Kirk, Esq.                                    (via CM/ECF)
Office of the Bankruptcy Administrator

JDG Investments, Inc.
1330 N. Brightleaf Blvd.
Smithfield, NC 27577